IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

| | |
|---|---|
| MERCY HEALTH NETWORK, INC., d/b/a MERCYONE,<br><br> Appellant,<br><br>v.<br><br>MERCY HOSPITAL, IOWA CITY, IA *et al.*,<br><br> Appellees,<br><br>DAN CHILDERS, SUCCESSOR LIQUIDATION TRUSTEE OF THE MERCY HOSPITAL LIQUIDATION TRUST,<br><br> Trustee-Appellee,<br><br>U.S. TRUSTEE,<br><br> U.S. Trustee. | Case No. 25-1654<br><br><br><br>**REPLY SUPPORTING MOTION TO DISMISS APPEAL (LACK OF STANDING)**[1] |

 Pursuant to Federal Rule of Appellate Procedure 27, Dan R. Childers, in his sole capacity as Successor Trustee of Mercy Hospital Liquidation Trust ("Trust"), respectfully submits this reply supporting his motion to dismiss Appellant Mercy Health Network, Inc. d/b/a MercyOne's appeal for lack of standing:

---

[1] By filing this reply, the Trust does not waive and instead preserves and reserves any and all right, argument, theory, etc.

- 1 -

Appellate Case: 25-1654  Page: 1  Date Filed: 06/03/2025 Entry ID: 5523324

## I. The Court Should Dismiss this Appeal Because MercyOne Has an Impermissible Motive.

Bearing in mind the costs of defending another round of appeal, the Trustee on May 5, 2025, exercised his settlement authority and made an immediate cash offer to pay MercyOne the full amount of its $31,000 claim. *See* Exhibit D (May 5, 2025 Letter); Exhibit E (Bankr. Doc.[2] 1919 ¶ 3). That way, the Trust would have more funds to pay the impaired claims of the Debtors' under-funded pensioners and other creditors, instead of being burned up by attorneys' fees. If MercyOne were truly concerned about hypothetical recoveries from "Remote Released Parties," it would have accepted the offer. That it did not indicates its motive is something different. More specifically, the Trustee posits MercyOne's actual concern is the chance of being sued for its potential mismanagement of the Debtors. *See* Exhibit F at 3, 8 (Bankr. Docs. 457–457-3 (identifying four-million-dollar fraudulent transfer claim against MercyOne under 11 U.S.C. section 548)). Rather than face a possible adversary complaint, however, MercyOne is attempting to reverse the Confirmation Order to negotiate a release for itself. In other words, although MercyOne is nominally a creditor in this appeal, its real interest is its fear of being sued. *See In re LTV Steel Co., Inc.*, 560 F.3d 449, 455 (6th Cir. 2009) (noting the true capacity in which a

---

[2] United States Bankruptcy Court for the Northern District of Iowa Case No. 23-00623 ("Bankr. Doc.").

bankruptcy appellant appeals for standing purposes (citing and quoting *In re Trailer Source, Inc.*, 555 F.3d 231, 250-51 (6th Cir.2009) (Rogers, J., dissenting)). Thus, apart from the "prudential reason[s]" to dispose of this case on the straightforward grounds of appellate standing, the Trustee suggests MercyOne's self-focused attempt to disrupt the Plan is an additional reason to dismiss and to not decide the merits. *Cf. Colorado Republican Fed. Campaign Comm. v. Fed. Election Comm'n*, 518 U.S. 604, 624 (1996) (discussing the "prudential reason[s]" to avoid complex issues when the appeal can be decided on narrower grounds).

## II. Impaired Creditors Do Not Automatically Have Appellate Standing.

MercyOne's contention that impaired creditors always have appellate standing is wrong. Opp. at 2. As the Sixth Circuit explained, "[s]imply holding a claim of any type against the estate does not automatically confer appellate standing under the 'person aggrieved' doctrine." *In re LTV Steel Co., Inc.*, 560 F.3d at 455 (citing *Trailer Source,* 555 F.3d 250 (Rogers, J., dissenting) (collecting cases)). Consequently, even creditors must show they were adversely affected by an order to appeal it. *Id.*

For example, the Seventh Circuit dismissed for lack of standing an impaired creditor's appeal of an order distributing estate assets to lawyers of the bankruptcy estate. *In re GT Automation Grp., Inc.*, 828 F.3d 602, 604 (7th Cir. 2016). The lawyers argued the creditor lacked standing since, even if the challenged payments had not been made, the creditor provided no evidence it

- 3 -

would have received a distribution on its claim, given the value of senior claims the estate would need to pay first. *Id.* at 605. Much like MercyOne here, the creditor nonetheless urged it was "theoretically possible" it would "benefit" if the order were reversed. *Id.* Rejecting that speculation, the Seventh Circuit held "[w]ithout a doubt" that the creditor lacked standing not merely under the person aggrieved standard, but under Article III. *Id.*; *see In Matter of The Watch Ltd.*, 257 F. App'x 748, 750 (5th Cir. 2007) (unpublished) (dismissing case on mootness grounds yet finding it "unlikely" that the impaired creditor was a person aggrieved "because whether [the creditor] will recover on his $1,829.61 unsecured claim is highly speculative, to say the least.").

MercyOne's argument therefore contravenes both the person aggrieved standard and Article III. But rejecting that argument does not strike a split with the Second and Ninth Circuits as MercyOne suggests, because MercyOne misapplies those Circuits' standing doctrines.

The Second and Ninth Circuits "general[ly]" find that "creditors have standing to appeal orders of the bankruptcy court *disposing of property of the estate* because such orders directly affect the creditors' ability to receive payment of their claims." *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 642 (2d Cir. 1988) (emphasis added); *In re P.R.T.C., Inc.*, 177 F.3d 774, 778 (9th Cir. 1999) (similar). But that general statement is premised on the appellant being able to identify the estate property that was distributed under the appealed-from order. Typically,

- 4 -

this is easy to do. In *In re P.R.T.C.*, for instance, a creditor had standing to appeal a settlement order where the order transferred the estate's right to sue various defendants to one of those defendants. 177 F.3d at 778. And in *In re DBSD N. Am., Inc.*, the fight was over a "gift" of shares and warrants the appellant claimed violated the absolute priority rule. 634 F.3d 79, 87 (2d Cir. 2011).

By contrast, here MercyOne has not identified *any* claim against the Remote Released Parties that the Debtor Releases purportedly let go. Unlike the *P.R.T.C.* and *DBSD* appellants who identified the property transferred by the appealed-from order, MercyOne only offers speculation on this front, not evidence. *E.g.*, Opp. at 12 (speculating released claims "almost certainly" existed). Because MercyOne cannot make the threshold showing there was a release of Estate claims, the Second and Ninth Circuits' standing doctrines, being predicated on the disposition of estate assets, are inapplicable. They do not confer standing on MercyOne.

Moreover, if MercyOne tries to argue it has standing because it would benefit under an "alternative plan[]" without the Remote Releases that would retain claims against the Remote Released Parties, the same problem arises. *Kane*, 843 F.2d at 641. MercyOne would again need to prove that claims against those parties in fact exist, which it cannot do. *In re Citation Corp.*, 371 B.R. 518, 522 (N.D. Ala. 2007) ("Speculative or hypothetical claims are insufficient to establish standing."). Even if it could, any value added to the Trust through

- 5 -

reducing the claims to judgment is so rife with contingency that the "person aggrieved" standard cannot be met. *Matter of Highland Cap. Mgmt., L.P.*, 74 F.4th 361, 367, 367 n.23 (5th Cir. 2023) (holding that an appellant's litigation-based theory of standing failed where "no less than seven different 'ifs' must come to pass," ranging from the claims being filed to the dispositive decisions being upheld on appeal, before the appellant would be injured).

## III. MercyOne Lacks Standing to Appeal the Third-Party Releases.

MercyOne cites no authority and provides no cogent explanation of how it could have standing to appeal the Third-Party Releases despite opting out of them. Opp. 18-21. The air-tight logic that the act of opting out of the release precludes MercyOne from being aggrieved by it is uniformly accepted. *E.g.*, *In re Indianapolis Downs, LLC*, 486 B.R. 286, 304 (Bankr. D. Del. 2013); *In re Mallinckrodt PLC*, 639 B.R. 837, 877 (Bankr. D. Del. 2022). And absent an actual injury, MercyOne cannot manufacture standing from a perceived violation of the Bankruptcy Code. *In re Cap. Contracting Co.*, 924 F.3d 890, 898 (6th Cir. 2019) (reasoning that a bankruptcy appellant "may not assert merely the 'vindication of the rule of law' as its basis for harm without alleging an actual injury from the purported violation" (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106 (1998)); *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) ("Article III standing requires a concrete injury even in the context of a statutory violation." (quoting *Spokeo, Inc. v. Robins*, 578 U. S. 330, 341 (2016)); *see also In*

re Bay Circle Props., LLC*, 955 F.3d 874, 879 (11th Cir. 2020) (holding that an appellant cannot attain person-aggrieved status "simply by virtue of attacking the inherent fairness of a bankruptcy proceeding").

## IV. Appellate Standing Is a Per-Issue Affair.

MercyOne also asserts if it has standing to appeal one provision of the Confirmation Order (which it doesn't), then it has standing to appeal all provisions of the order. Opp. at 18. Yet this is untrue. "Standing is not dispensed in gross, but rather is determined by the specific claims presented." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 215 (3d Cir. 2004), *as amended* (Feb. 23, 2005) (citing *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)). "In the bankruptcy context, the Court must assess whether an appellant has standing not just to raise a general objection to an order, but whether appellant has standing to advance specific arguments in opposition to that order." *In re Motors Liquidation Co.*, 430 B.R. 65, 92 (S.D.N.Y. 2010). That is why the Second Circuit in *Kane* analyzed the appellants' standing for each issue on appeal, rather than wholesale as MercyOne would have it. *Kane*, 843 F.2d at 641-646. In addition, MercyOne's sole cited opinion does not hold otherwise, and in fact suggests agreement with the per-issue approach. *See Elec. Priv. Info. Ctr. v. United States Dep't of Com.*, 928 F.3d 95, 100 (D.C. Cir. 2019) ("EPIC is required to establish standing as to each claim, and each form of requested relief.").

## V. The Oversight Committee's Conduct Does Not Create Standing.

In a new argument, MercyOne urges it has standing because the Trust Oversight Committee issued Bankruptcy Rule 2004 production and deposition requests that MercyOne has apparently expended resources in complying with. *See* Fed. R. Bankr. R. 2004. The Eighth Circuit, however, has already unequivocally held "a bankruptcy court order allowing litigation to proceed against an adversary defendant does not make that defendant a party aggrieved." *Opportunity Fin., LLC v. Kelley*, 822 F.3d 451, 458 (8th Cir. 2016).

More fully, the reason litigation does not turn an appellant into a person aggrieved is that "litigation causes only *indirect* harm to that party." *Opportunity Fin.*, 822 F.2d at 459. This harm is equally indirect no matter whether the plaintiff is properly authorized to sue or not. As the Eleventh Circuit held in *In re Harie Ford, Inc.*, the defendant there lacked standing to appeal an allegedly erroneously entered plan-confirmation order that enabled a liquidating agent to sue the defendant on over a dozen causes of action since the harms from that order were indirect. 764 F.3d 1321, 1326 (11th Cir. 2014); *In re LTV Steel Co., Inc.*, 560 F.3d at 456 ("[W]e are aware of no court that has held that the burden of defending a lawsuit, however onerous or unpleasant, is the sort of direct and immediate harm that makes a party 'aggrieved' so as to confer standing in a bankruptcy appeal."). The outcome should be no different here.

- 8 -

Further, MercyOne's reliance on *Truck Insurance Exchange* is misplaced. *Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268, 277 (2024). That opinion addressed a party-in-interest's so-called "standing" to appear and be heard before a bankruptcy court in a Chapter 11 case under Bankruptcy Code section 1109. *Id.* (discussing 11 U.S.C. § 1109); *see Matter of Highland Cap. Mgmt., L.P.*, 74 F.4th 361, 366 (5th Cir. 2023) ("Bankruptcy courts are not authorized by Article III of the Constitution, and as such are not presumptively bound by traditional rules of judicial standing." (citation omitted)). But a party's section 1109 right of participation at the bankruptcy-court level is different from, and far broader than, a party's standing to appeal at the appellate level. *In re AFY*, 734 F.3d 810, 824 (8th Cir. 2013). MercyOne must establish appellate standing. *Id.* Since it cannot do so, its appeal should be dismissed. In any event, section 1109 merely states "a creditor . . . may raise and may appear and be heard . . . ." 11 U.S.C. § 1109(b). MercyOne did appear and was heard by the Bankruptcy Court. Section 1109 was satisfied, and does not help MercyOne in this appeal.

Moreover, MercyOne fails to mention that it consented to the discovery order it now complains about. Exhibit G at 22 (Bankr. Doc. 1854); *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013) (holding that "self-inflicted injuries" do not confer standing). In addition, even if the Confirmation Order were reversed and the Oversight Committee disbanded, the Debtors would regain control of the Estate's claims and re-issue discovery to MercyOne, just as the

- 9 -

Appellate Case: 25-1654   Page: 9   Date Filed: 06/03/2025 Entry ID: 5523324

Oversight Committee has done. *See* Exhibit F at 8 (Bankr. Doc. 457-3 (four-million-dollar fraudulent transfer claim against MercyOne)). Since MercyOne will face discovery demands with or without reversal of the Confirmation Order, MercyOne's alleged discovery expenses cannot supply it with standing. *See In re Merrifield*, 214 B.R. 362, 366 (B.A.P. 8th Cir. 1997) (finding no appellate standing where the appellant would "gain nothing" from a reversal).

Finally, even assuming MercyOne's purported discovery costs give it standing (they don't), MercyOne still would not have standing to appeal the Releases it objects to because standing is possessed on an issue-by-issue basis, and the Releases have no bearing on the Oversight Committee's discovery powers. *In re Combustion Eng'g, Inc.*, 391 F.3d at 215; *In re Motors Liquidation Co.*, 430 B.R. at 92. Accordingly, MercyOne's appeal should be dismissed.

WHEREFORE, the Successor Liquidation Trustee respectfully prays this Court enter and enroll an Order dismissing the Notice of Appeal filed by MercyOne, and for such other relief as may be just and proper under the premises.

/s/ Joseph J. Porter  
Eric W. Lam, AT0004416  
Joseph J. Porter, AT0014454  
SIMMONS PERRINE MOYER BERGMAN PLC  
115 Third Street SE, Suite 1200  
Cedar Rapids, IA 52401  
Tel: 319-366-7641; Fax: 319-366-1917  
elam@simmonsperrine.com  
jporter@spmblaw.com  
ATTORNEYS FOR DAN R. CHILDERS, SUCCESSOR TRUSTEE OF MERCY HOSPITAL LIQUIDATION TRUST

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 3, 2025, a copy of the foregoing document was filed with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit using the CM/ECF system, and served electronically on those participants that receive service through the CM/ECF System.

/s/ Joseph J. Porter

# CERTIFICATE OF COMPLIANCE

This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in Microsoft Word using a proportionally spaced typeface—Calisto MT 14 point.

This motion with the type-volume limitation of Fed. R. App. P. 27(d)(2) which permits up to 2,600. As determined by the word count feature of Microsoft Word, this motion contains 2,238 words.

Dated: June 3, 2025

/s/ Joseph J. Porter
Joseph J. Porter